IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ELIZABETH D. VALENTINE,**

    Plaintiff,

v. // CIVIL ACTION NO. 1:06CV114
                               (Judge Keeley)

**VERIZON PENSION PLAN FOR MID-ATLANTIC
ASSOCIATES and DONNA C. CHIFFRILLER,**
Chairperson Claims Review Committee,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I. Background**

On July 27, 2006, the plaintiff, Elizabeth D. Valentine ("Valentine"), filed a complaint in this Court under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"), in which she alleged improper administration of the Verizon Pension Plan for Mid-Atlantic Associates (the "Plan").

Valentine is a 47-year old female who began her employment with Verizon Communications on July 5, 1978. She contends that the Plan last denied her request for disability pension benefits on March 2, 2006, and that, as found by her treating physician, she was totally disabled at that time. She also states that, as of March 2, 2006, she had exhausted all of her administrative remedies

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

and was and continues to be disabled as defined by the terms of the Plan.

In her suit, Valentine seeks: (1) an injunction against the defendants for refusing to pay disability benefits to her; (2) unpaid benefits from the date of her disability through the date of the judgment; (3) prejudgment interest and cost of living increases; and (4) reasonable costs and attorneys' fees.

On January 4, 2007, the Court held a scheduling conference during which it granted Valentine 45 days to conduct limited discovery to determine the scope of any conflict of interest under which the Plan may be operating. Valentine had specifically questioned whether Verizon's pension plan, which provides disability benefits, was fully funded or whether it was unfunded with any disability benefits being paid from Verizon's general assets. On February 20, 2007, the Plan filed the administrative record with the Court.[1] The preliminary discovery is now complete

---

[1] The Administrative Record provided by the Plan is comprised of two sections. The first section, attested to by Dan Fish of Hewitt Associates, LLC, appears to be a copy of all records generated with respect to Valentine's claim for disability benefits. The second section, attested by Rita Galgano, purports to be copies of the Plan, summaries thereof, and any modifications. For ease of reference, this order refers to the exhibits attested by Ms. Galgano as the "Galgano Exhibits" and the exhibits attested by Mr. Fish as the "Fish Exhibits."

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

and the parties have filed competing motions for summary judgment that are fully briefed and ripe for decision.

**II.  Standard of Review**

A reviewing court must initially decide <u>de novo</u> whether the ERISA plan's language grants the plan administrator discretion to determine the claimant's eligibility for benefits, and, if so, whether the administrator acted within the scope of that discretion.  <u>Haley v. Paul Revere Life Ins. Co.</u>, 77 F.3d 84, 89 (4th Cir.1996). The Fourth Circuit has consistently held that if an ERISA plan vests discretionary authority in the plan administrator to interpret the plan's terms and to adjudicate claims, the court's role on judicial review is limited to deciding whether the administrator's denial of benefits was an abuse of discretion. <u>Booth v. Walmart Stores, Inc</u>., 201 F.3d 335, 341 (4th Cir. 2000).

No specific phrases or terms are required in ERISA plans to preclude a <u>de novo</u> standard of review on judicial review of denial of benefits; the plan's intention to confer discretion on the plan administrator, however, must be clear. <u>Feder v. Paul Revere Life Ins. Co.</u>, 228, F.3d 518, 522-24 (4th Cir. 2000).  If an ERISA plan does not clearly grant discretion to a plan administrator to determine a claimant's eligibility for benefits, the standard of

**VALENTINE V. VERIZON PENSION PLAN, ET AL.**                1:06CV114

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

review is de novo. Id.  Here, Valentine concedes that the Plan's plain language grants the plan administrator the discretion to determine a claimant's eligibility for benefits and that, in her case, the administrator acted within the scope of that discretion.

Under the abuse of discretion standard, "the administrator or fiduciary's decision will not be disturbed if it is reasonable (i.e.-resulting from principled reasoning and supported by substantial evidence), even if this court would have come to a different conclusion." Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997).

When the administrator has a conflict of interest, courts apply a "modified abuse of discretion" standard, weighing the conflict of interest as a factor in determining whether there is an abuse of discretion. Id. at 233.  In reviewing a fiduciary's denial of benefits under an ERISA plan, a court applies a conflict of interest factor on case by case basis.  Thus, a Court will lessen the deference normally given an administrator under an abuse of discretion standard of review only to the extent necessary to counteract any influence unduly resulting from a conflict. Id. Even when applying the modified abuse of discretion standard, the court's review remains limited to the administrative record.

**VALENTINE V. VERIZON PENSION PLAN, ET AL.**  1:06CV114

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Nessell v. Crown Life Ins. Co., 92 F.Supp.2d 523, 532 (E.D.Va. 2000).

The Plan argues that this Court should apply an unmodified abuse of discretion standard of review because, despite the fact that they are high level Verizon employees, the VCRC members do not have a conflict of interest. It cites with approval the case of de Nobel v. Vitro Corp., 885 F.2d 1180 (4th Cir. 1989), in which the Fourth Circuit held that a conflict of interest does not exist sufficient to modify the abuse of discretion standard where a fully funded, defined benefit pension plan was managed by fiduciaries who were also high level employees of the plan's sponsor. Id. at 1191. In de Nobel, the Fourth Circuit reasoned that benefits decisions only have an immediate impact on the fund itself, not the sponsor. Id. Furthermore, the fact that the denial of benefits may have a favorable impact on the balance sheet of the trust does not suggest a conflict of interest because "the fiduciaries are obligated to act not only in the best interests of beneficiaries, but with due regard for the preservation of trust assets." Id.

In this case, the parties agree that the Plan is a fully funded, defined benefit pension plan; Section 16.1 of the Plan states that Verizon has established and maintains a Pension Fund in

5

**VALENTINE V. VERIZON PENSION PLAN, ET AL.                    1:06CV114**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

a trust separate from the assets of any Participating Company for the payment of disability pensions.  Moreover, § 16.7 of the Plan states that no disability pension payments shall be paid by a Participating Company after December 31, 1993, but, instead, payments to beneficiaries after that date shall be made from the Pension Fund.  Given these provisions, the holding in de Nobel pertains to the question posed in this case and compels the application of an unmodified abuse of discretion standard.[2]

**III.  Analysis**

**A.  Course of Treatment and Administrative Process**

Valentine worked as a consultant for Verizon Communications Inc. ("Verizon") and her last day of work before initially applying for benefits under the Plan was October 12, 2003.[3]  The Plan provides disability benefits to eligible employees if the employee "becomes totally disabled as a result of sickness or injury for

---

[2] Even if this Court were to apply the modified abuse of discretion standard or de novo standard of review sought by Valentine, for the reasons stated in this order, this Court finds that it would still grant Defendants' Motion for Judgment on the Administrative Record and deny Plaintiff's Motion for Summary Judgment.

[3] It appears that Valentine returned to work for interment periods after this date with limited duties and for limited amounts of time.

6

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

that the Participant is eligible to receive short term disability benefits under the short term disability plan managed by the participating company."[4] The Plan defines Totally Disabled as follows:

> For the purpose of this section, Totally Disabled shall mean a medically determined condition of total and permanent disability that commences at a time when the Participant is an Eligible Employee, that entitles the Participant to sickness disability benefits under the short term disability plan maintained by the Participating Company, and that continues to exist after the Participant has received sickness disability benefits for the full period to that he is entitled under such short term disability benefit plan. Disability shall not include conditions or disorders that are due to an on-the-job injury that entitles the Participant to continue for the full duration of the period of total disability to receive accident disability benefits under the Participating Company's short term disability plan. The Claims Administrator may require that the total and permanent disability be confirmed by a qualified physician appointed by it prior to, and at reasonable time and of reasonable intervals during, the payment of a disability pension hereunder. The determination by the Claims Administrator (and, in the event of an appeal, by the Appeals Administrator) of a Participant's disability shall be conclusive.

Once granted, disability pension benefits under the Plan must be terminated if "the Participant recovers sufficiently to resume active service with Verizon."

---

[4] It is undisputed that Valentine is eligible to apply for these benefits.

**VALENTINE V. VERIZON PENSION PLAN, ET AL.**                1:06CV114

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In October 2003, Valentine requested a leave of absence and short term disability benefits for psychiatric impairment. Verizon approved her request on or about November 3, 2003. At that time, her symptoms included "extreme lack of energy, unable to do anything, depressed effect, withdrawing, staying in her room 12 hours per day and a blunt mood." Verizon received this information from Valentine's treating physician, Dr. Bowles, and her treating psychiatrist, Dr. Colvin.

Verizon approved Valentine for a disability pension on February 20, 2005.[5] During the time immediately preceding this approval, her Global Assessment of Functioning ("GAF") score was 45.[6] Dr. Colvin's treatment notes from that time state that she was then "unable to function" and that her condition was "worse[ning]."

---

[5] Verizon, as plan administrator, outsourced some of its initial claim processing functions to MetLife. However, Verizon maintained supervision and ultimate control over these processes. Therefore, for ease of reference, actions taken by Verizon or MetLife in the course of the administrative process are attributed to Verizon.

[6] According to the American Psychiatric Association, a score of 45 indicates "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

8

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

As part of her obligation under the Plan, Valentine continued to provide Verizon with her treating physician's evaluation forms. From an examination of these evaluation forms, it is apparent that Valentine's condition significantly improved over the next few months to such a point that, in February 2005, her own doctor's treatment notes state that she was in "partial remission," that her "affect" and "mood" were both "better," and that her condition was "improv[ing]."

In April 2005, Dr. Colvin's notes indicated that Valentine's emotional expression was "good," and her appearance, speech, sensorium, thinking and perception were all normal. These April treatment notes also indicate a GAF score of 65, a substantial improvement over her previous score.[7]

In May 2005, the Plan hired Dr. Mark Schroeder, a board certified psychiatrist, to review Valentine's file. According to Dr. Schroeder, "the available information does not substantiate a severity of psychiatric impairment that would cause restrictions or limitations." He specifically stated:

---

[7]According to the American Psychiatric Association, a score of 65 indicates that, notwithstanding "some difficulty" in functioning, one is "generally functioning pretty well." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

9

**VALENTINE V. VERIZON PENSION PLAN, ET AL.**     **1:06CV114**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

> The functional assessment from Psychiatrist Dr. Colvin received on 5/2/05 noted a diagnosis of major depressive disorder recurrent in partial remission and panic disorder without agoraphobia; GAF score of "65". The doctor reported observing symptoms of anxiety and depressed mood and psychomotor retardation, but does not document has this affects the employee's ability to function. It stated the employee was seen every three months. Medication is Lexapro, Wellbutrin and Xanax. The doctor noted improvement in functioning at home; did not address ability to perform ADL's; no suicidal or homicidal thoughts; no hospitalization; no return to work date. The employee stated that her job description has not been reviewed.
>
> The available mental health information noted that the employee has reported symptoms of anxiety and depression, but the record does not provide a detailed description of these symptoms, such as their intensity, frequency and duration. The doctor had noted observing some signs of psychiatric illness or impairment, such as depressed mood, psychomotor retardation and anxiety, but does not provide a detailed description of these, nor document more severe observed signs of illness such as marked deficits in organization of though, reality testing, cognitive or motor functioning, communication or hygiene. The record does not provide a detailed description of the employee's daily activities or functional abilities, or specifically state why the employee's reported symptoms would prevent her from working. The record indicates that the employee is seen every three months, that does not suggest treatment for an acute and severe mental disorder. The record did not indicate that the employee is receiving intensive rehabilitation for her reported symptoms of impairment.

Id.

After receiving Dr. Schroeder's opinion, the Plan offered Dr. Colvin the opportunity to respond. Although Dr. Colvin did provide

10

**VALENTINE V. VERIZON PENSION PLAN, ET AL.**  1:06CV114

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

a one page letter disagreeing with Dr. Schroeder's opinion, he provided no additional documents or information to fill in any of the factual gaps identified by Dr. Schroeder. Moreover, Dr. Colvin opined that if Valentine were placed in "any significant stressful situation . . . she w[ould] become symptomatic again." This statement implies that she was not symptomatic at the time. In July 2005, Dr. Colvin once again indicated in his treatment notes that Valentine was still "maintaining remission."

Based on this information, the Plan concluded that Valentine was no longer "vocationally disabled" and suspended her Disability Pension benefits in a letter dated October 17, 2005. As the basis for the termination, the letter cited her increased GAF score and medical records that did not support objective functional impairments preventing her from returning to employment.

By a letter dated December 6, 2005, Valentine appealed the denial of her Disability Pension benefits to the Plan's appeals administrator, the Verizon Claims Review Committee (the "VCRC"). In support of her appeal, she submitted a letter dated December 9, 2005 from Dr. Colvin in which he reiterated the assertions in his June 1, 2005 letter. She also submitted Dr. Colvin's November 29, 2005 evaluation form.

11

**VALENTINE V. VERIZON PENSION PLAN, ET AL.**                          **1:06CV114**

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In accordance with the terms of the Plan, an independent medical reviewer, Dr. Rukshana Sadiquali, reviewed all of Valentine's medical files. Based upon his review of these records as a whole, especially Valentine's increased GAF score, Dr. Sadiquali recommended that the VCRC sustain the termination of Valentine's disability pension benefits. Based on the recommendations of Drs. Schroeder and Sadiquali, and its own review of the record, the VCRC denied Valentine's appeal of the denial of her Disability Pension benefits on March 2, 2006. This lawsuit followed.

**B. Abuse of Discretion Review**

Under the abuse of discretion standard, "the administrator or fiduciary's decision will not be disturbed if it is reasonable (i.e.-resulting from a deliberate principled reasoning process and supported by substantial evidence), even if this court would have come to a different conclusion." Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997). This Court, therefore, must uphold the decision of the VCRC as long as that decision is (1) based on principled reasoning and (2) supported by substantial evidence.

12

**VALENTINE V. VERIZON PENSION PLAN, ET AL.** 1:06CV114

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

After reviewing the record as a whole, this Court finds that the decision of the VCRC resulted from a deliberate, principled reasoning process. The VCRC consulted two independent physicians to review the medical records and render an opinion. Both doctors opined that Valentine's increased GAF, noted by her own treating physician, along with the lack of other supporting evidence of disability in the record, supported the conclusion that she was no longer vocationally disabled. When given the opportunity to supplement the record, her treating psychiatrist, Dr. Colvin, failed to do so. The VCRC reviewed all available information, relied on the expert opinions of Drs. Schroeder and Sadiquali and considered the lack of evidence to the contrary before upholding the denial of Valentine's disability pension benefits.

The decision of the Plan was supported by substantial evidence. The VCRC considered all of the available medical evidence, including all records from Dr. Colvin and the opinions of Drs. Schroeder and Sadiquali. That evidence indicated that Valentine's functional level had dramatically improved to a point where she could return to work. Dr. Colvin had ample opportunities to submit any further evidence of impairment but failed to do so. Thus, the Court finds that substantial evidence supports VCRC's

13

**VALENTINE V. VERIZON PENSION PLAN, ET AL.** 1:06CV114

**MEMORANDUM OPINION AND ORDER GRANTING THE DEFENDANTS'
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

conclusion that Valentine was no longer vocationally disabled, and that the weight of the evidence strongly favored that conclusion.

Therefore, for the reasons discussed above, this Court **GRANTS** the Plan's Motion for Judgment on the Administrative Record (dkt. no. 23) and **DENIES** Valentine's Motion for Summary Judgment (dkt. no. 22). The Court ORDERS the Clerk to enter judgment for the Defendants and **STRIKE** this case from the docket.

**IT IS SO ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: October 25, 2007.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE